CASE 77—ACTION BY THE DISTRICT OF HIGHLANDS OF CAMPBELL COUNTY, AGAINST THE CITY OF COVINGTON FOR THE APPOINTMENT OF A RECEIVER AND THE ENFORCEMENT OF A LIEN FOR TAXES.— JUNE 5.

# City of Covington v. District of Highlands of Campbell County

APPEAL FROM CAMPBELL CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

SPECIAL AND LOCAL STATUTES—ACT INCORPORATING TAXING DISTRICT —REPEAL BY CONSTITUTION.

Held: 1. A special act of the Legislature incorporating a taxing district with many of the governmental powers of towns and cities was not repealed by the Constitution, though that instrument prohibits the Legislature from passing such special laws in the future, and provides for the repeal of all laws inconsistent with its provisions.

2. Unless authority be given to the courts to entertain proceedings

City of Covington v. District of Highlands of Campbell County.

for the collection· of taxes, they will ·not take jurisdiction for that purpose.

3. As the waterworks of a city are essential to the public health and comfort, they can not be sold for taxes; but where the city has failed, after reasonable demand, to pay taxes due thereon to a taxing district, the district may, by a direct proceeding, have a receiver appointed to take charge of the property and collect its taxes.

RAMSEY WASHINGTON, F. J. HANLON AND GEORGE WASH-INGTON, FOR APPELLANT.

The district of Highlands is a large country district in Campbell county, which the Legislature, prior to the˙ passage of the new Constitution, by special acts, created and gave the power to levy and collect a tax for various local purposes.

Plaintiff's petition shows ·that this district has· continued operating under these laws up to the present time.

The question arises:   Under the new law, is the district of Highlands, one of the political parts of the State which can levy and collect taxes?

·We contend that the present Constitution does not contemplate the existence or creation of any such district as the district of Highlands.   That, as the district has no indebtedness, it can not collect any taxes; that if it did have an indebtedness created prior to September 28, 1891, the county assessor should assess, the fiscal court make the levy, and the sheriff collect same; that if the ·Constitution does contemplate the existence or creation of such a district, the special acts relating to the levy, assessment and collection of taxes are inconsistent with section 59, subsection 15, and section 171 of the Constitution; and as.the General Assembly has not passed any ·general laws for the purpose of levying and collecting taxes in such districts, and more than six years have passed since the adoption of the Constitution, the provisions of the˙ Constitution in section one of the schedule, repeal the special acts.

## CITATIONS AND AUTHORITIES.

Kentucky Statutes, secs. 2740, 2741, 2416. 1839, 4054, 4129; Constitution, secs. 157, 158, 181, 161, 59, 171; Schedule, sec. 1, 15 Am. & Eng. Ency. sec. 2, p. 955; 18 R., 36; 23 R., 1210, 2056; 19 R., 860.

City of Covington v. District of Highlands of Campbell County.

L. J. CRAWFORD, for appellee.

PROPOSITIONS ADVANCED AND AUTHORITIES CITED.

1. Appellee not a town.     Stephens, &c v. Felton, &c., 18 R., 248.

2. Appellee's right to exist and levy taxes in question not affected by general common school laws.     Roberts v. Clay City, 19 R., p. 1046; Mayor and Councilmen of the City of Eminence v. Wilson, &c., 20 R., p. 29; Board of Education of Hawesville, &c. v. Louisville, Henderson & St. Louis Ry. Co., 23 R., p. 367; Louisville & Nashville R. R. Co. v. Trustees of Elizabethtown District Public School, 23 R., p. 1169; Hickman College v. Trustees Colored Common School District A., 23 R., p. 1271.

3. Nor by general laws as to counties, none of the district roads being county roads. Kentucky Statutes, sec. 4287; Kentucky Statutes, sec. 4306; Acts forming district and shown in phamphlet filed herewith, especially that of April 22d, 1884 (p. 14 pamphlet).

4. Appellant liable for taxes. City of Covington v. Commonwealth, 19 R., pp. 150 and 173, U. S. Sup. Ct., 231.

5. Authority to levy and collect taxes in question fully given by district acts. See compendium of acts filed herewith.

6. Appointment of Receiver proper and mandamus not proper remedy. Burroughs on Taxation, sec. 144 (ed. 1877), City of Newport v. Commonwealth, 21 R., p. 42; Clarke, Sheriff v. L. W. Co., 90 Ky., 515, especially 524; Louisville Water Co. v. Hamilton, Ky., 517, especially p. 524.

7. Similar districts upheld. O'Mahoney v. Bullock, &c., 17 R., 523; Bruce, &c. v. Vanceburg & Stout's Lane T. P. R. Co., 18 R., v. 35.

8. Suburban districts, not cities of any class, may exist under acts passed before the present Constitution, and may be created under general laws under the present Constitution, with power to levy taxes and prescribe police regulations. Constitution, secs. 59, 60, 156, 157, 158, 159, 161, 162, 164, 165, 179, 180, 181, Schedule, sec. 1; Piper v. Gunther, 95 Ky., 115; Pearce v. Mason Co., 99 Ky., 357; Stephens v. Fulton, 99 Ky., 395.

9. A suburban district created under laws passed before the present Constitution may levy taxes for school purposes, general corporate purposes, and to maintain roads and sidewalks. Roberts v. Clay City, 19 R., 1048; Richardson v. Boske, Sheriff, 23 R., 1209; Johnson v. Boske, Sheriff, 23 R., 1845; Dist. of Clifton v. Schneider, 21 R., 212.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

By an act of the Legislature approved February 27, 1867, and by various amendatory acts thereto, passed prior to September, 1891, a certain territory in Campbell county was incorporated as "the district of Highlands in Campbell county." It was provided with a constabulary, justices of the peace, and trustees, who were empowered to pass by-laws for its government; was authorized to establish and maintain graded schools and to establish and maintain roads within the district, to condemn lands for these purposes, and to levy, collect, and appropriate a sufficient revenue by taxation to meet the obligations of its government. Within the territory of this district is located the waterworks plant owned by the city of Covington. The board of trustees of the district assessed taxes to the amount of 50 cents on the $100 upon all property in the district subject to taxation for the years 1899, 1900, and 1901. The acts creating the district permitted that rate. The assessor of the district and its board of supervisors provided by the special acts above referred to assessed the waterworks plant of appellant for the year 1899 at the valuation of $248,460, for the year 1900 at $425,000, and for 1901 at $425,000. The city of Covington having defaulted in the payment of the taxes for the years named, this suit was brought in the Campbell circuit court for the appointment of a receiver of the waterworks plant, and for the enforcement of appellee's lien given to it by the statute upon the property assessed and in default. The circuit court granted the relief. The city of Covington appealing, contends that the special acts creating the district of Highlands were repealed upon the adoption of the new Constitution in September, 1891; that

consequently the levy of the tax by its trustees was without authority of law and is void. It is argued for appellant that the only municipalities provided for by the present Constitution are counties, cities, towns and school districts, and that, as no provision is made for the incorporation of any other municipality, the creation of such would be unauthorized by law, and that such as had been created prior to the present Constitution ceased to be, and were without legal authority, upon the adoption of that instrument.

The district of Highlands is a suburban country community upon the hills back of Newport, and is about 4 miles in length, with an average width of from 1 to 1½ miles. Within it is located the army post, Ft. Thomas. It is traversed by two macadam roads of extraordinary width, and is traversed by one street car line. The municipality has provided sidewalks for a considerable distance along these roads. Quite a number of suburban residences are within the territory, and in the immediate vicinity of the fort are shops, places of amusement, etc. The district is not a town, and therefore could not be properly classified as such, as the Legislature was required by the Constitution to do. Stephens v. Felton (18 R., 248) (35 S. W., 1116). While it is true that the Legislature is prohibited by the present Constitution from passing special acts incorporating any particular locality into a town or other municipality, it by no means follows that all the acts for that purpose passed prior to the adoption of the present Constitution were repealed by that instrument. The schedule adopted with the Constitution declares: "That all laws of this Commonwealth in force at the time of the adoption of this Constitution, not inconsistent therewith, shall remain in full force until altered or repealed by the

General Assembly; and all rights, actions, prosecutions, claims and contracts of the State, counties, individuals or bodies corporate, not inconsistent therewith, shall continue as valid as if this Constitution had not been adopted. The provisions of all laws which are inconsistent with this constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions as require legislation to enforce them shall remain in force until such legislation is had, but not longer than six years after the adoption of this Constitution, unless sooner amended or repealed by the General Assembly." This schedule should be read in connection with section 59 of the Constitution, which imposes limitations upon the power of the General Assembly, prohibiting it from passing local or special acts in any case where a general law can be made applicable. In Pearce v. Mason Co., 99 Ky., 363 (18 R., 266) (35 S. W., 1122), the question involved was the validity of a local act of May, 1896, to provide free turnpike roads in Mason county. It was there contended that the local act was no longer in force,—not upon any provision of the Constitution expressly repealing it, or upon legislation subsequently had, if its effect be determined by the ordinary rule of statutory repeal, but upon the contention that the policy of the Constitution, which demands a substitution of general laws for all local ones, is inconsistent with the act. Therefore it was argued that when a general law on the subject of free turnpikes, such as might be found in the fragmentary and incomplete legislative enactments on that subject since the adoption of the Constitution, was adopted, it must be taken as a full and complete expression of legislative will on that behalf. It was there said: "Section 59 prohibits the passage of local or special legislation regulating or authorizing the levy or collection of taxes

(subsection 15), or authorizing the opening, altering, main-
taining or vacating roads, highways, streets, alleys, etc.
(subsection 16). These provisions look altogether to future
legislation, and manifestly do not affect, directly or in-
directly, the laws already in force. The existing special
legislation on the subjects named in the various subsec-
tions of section 59, with respect to which special acts are
now prohibited, does not stand repealed by the mere force
of such prohibition." In Long v. City of Louisville, 97
Ky., 364 (17 R., 253) (30 S. W., 987), it was expressly de-
clared that constitutional provisions must be construed as
prospective, and not retrospective, unless constrained to
the contrary course by the rigor of the phraseology. The
court cited and quoted approvingly from Judge Cooley's
work on Taxation (page 294); the same eminent author's
work on Constitutional Limitations (page 77); Slack v.
Railroad Co., 13 B. Mon., 1, holding that the provisions of
the Constitution of 1850 should have prospective, and not
retrospective, operation, unless otherwise clearly indicated;
Beadleston v. Sprague, 6 Johns., 101 (Chancellor Kent).
In O'Mahoney v. Bullock, 97 Ky., 774 (17 R., 523) (31 S. W.,
878), it was said: "While the framers of the Constitution
evinced their hostility, so to speak, toward local and special
legislation, and authorized the passage only of general
laws, we do not understand that the general rules of con-
struction, by which one act may be construed to repeal an-
other, have in any wise been changed. Among these well-
settled rules are these: "That a general statute will not,
by mere implication, repeal a former one which is special
or local; that, moreover, there must be such a repugnancy
between the provisions of the acts that they can not stand
together or be consistently reconciled." This language was
used with reference to the controversy whether the gen-

eral law on the subject of turnpikes repealed a local act on that subject applicable to Fayette county. The local statute was upheld.

If it should be said that the undoubted hostility evinced by the constitutional convention toward local or special legislation, and as is embodied in the Constitution, would operate, within and of itself, to repeal the local act in question, it would be because only of the supposed hostility of the convention on this subject of special legislation. Therefore the argument would result, if it prevailed, in our holding that the adoption of the present Constitution repealed every local or special act which the Legislature had in all the years of the history of the Commonwealth enacted, and which had not been previously repealed. Such a sweeping and disastrous result, unjust and indefensible, could not have been within the contemplation of that body, and certainly not within the intent of the voters who ratified the instrument. As held in the cases above cited, it merely declared that in the future no such legislation should be passed. So far as that already enacted was concerned, where it was in direct conflict with some provisions of the Constitution on the subject treated of by the special or local act, and where no further legislation was required upon the subject, the special or local act stood thereby repealed, or, if the provisions of the local act were contrary to some provision of the Constitution bearing upon the same subject, as embraced or covered by the special act, but which constitutional provision required further legislation to carry it into effect, then the special act continued until such time as the Legislature expressly repealed it, or, in default of such action by the General Assembly, then it would stand repealed at the end of six years from the adoption of the Constitution. But to that class of special

or local acts the chief objection, if not the sole objection, to which was that they were special or local, and not general, in their application, no such repeal was provided by the Constitution. The Legislature may repeal them, of course, by a special enactment to that end; but until it does so they have all the validity of a law of the Commonwealth passed regularly by its law-making body, and within the limitations of the Constitution then in effect. Not having been repealed, they must be observed.

We are not prepared to say, however, that the creation of taxing districts, such as that provided for appellee, is contrary to the spirit or to any express provision of the present Constitution. That they may not be created by the special act of the Legislature is not to be doubted, but that general provision for such form of government, to be applied to particular localities, dependent upon a compliance with some general statute upon that subject, is quite clearly permitted. For example, there may be found in the present Constitution the following expressions: Sections 156 to 168 of the Constitution appear under the title "Municipalities." Section 156 provides for the classification of "the cities and towns of this Commonwealth." In sections 157, 158, 159, 161, 164, and 165, we find these expressions: "Any county, city, town, taxing district or other municipality;" "no county, city, town or other municipality;" and in section 161 it is also provided that "the compensation of any city, county, town or municipal officer shall not be changed after his election," etc.; and in section 165, "no person shall at the same time be a State officer or a deputy officer or member of the General Assembly, and an officer of any county, city, town or other municipality, or an employe thereof. Section 119 of the Constitution forbids the Legislature to authorize "any county or sub-

division thereof, city, town or incorporated district," to become a stockholder in any company, etc. By section 180 it is provided that "any ordinance and resolution passed by any city, county, town or municipal board or local legislative body, levying a tax shall specify," etc. In section 181 it is provided that "the General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation." Bouvier defines "municipal corporation" to be "a public corporation created by government for political purposes, and having subordinate and local power of legislation;  .  .  .  an incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local self government.  Glover, Mun. Corp., 1."

This court has recently had before it a number of cases involving certain features of special acts passed prior to the present Constitution, creating certain taxing districts in the counties of Campbell and Kenton.  Campbell Co. v. Commissioners of Court House Dist., 19 R., 860 (42 S. W., 111), Richardson v. Boske, 41 Ky., 893, 23 R., 1209 (64 S. W., 919, and Campbell Co. v. Newport & C. Bridge Co., 112 Ky., 659, 23 R., 2056 (66 S. W., 526, are this class of cases.  In each of these cases the question was whether the taxing district in question was relieved of its share of the burden imposed upon the taxable property of the whole county because of the provisions of the special acts above referred to.  Under the section of the Constitution which provides that taxes shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax, it was held that the special acts creating the taxing districts were repealed by this section of the Constitution, in so far as it exempted the taxable property within these districts from taxation for the expenses of government, chargeable

against the whole county. In none of these cases was it held that the local community was prohibited by anything in the Constitution from indulging additional governmental advantages if it saw proper to do so. In the case of Long v. City of Louisville, supra, it was said of this section: "This section, however, we apprehend, is prospective only, and not retrospective." In that case an assessment of taxes made under a prior special statute, applicable to the city of Louisville alone, was upheld and enforced, although a general law had been subsequently passed in substitution for the one under which the assessment was made. The suit involved the collection of delinquent taxes.

The question then recurs to the right of the taxing district to proceed to the collection of those taxes by suit. If may be stated as a general proposition of law, generally recognized, and clearly so in this State, that, unless authority be given to the courts to entertain proceedings for the collection of taxes, they will not take jurisdiction for that purpose. Clark v. Water Co., 90 Ky., 515 (12 R., 444) 14 S. W., 502, and Water Co. v. Hamilton, 81 Ky., 517, 5 R., 557), were both suits involving the right of the sheriff to levy upon the property of the water company, and to sell it in order to collect the taxes due the Commonwealth and county. Although there is no statute forbidding a sale of such properties to produce the money necessary to pay the taxes due upon them, yet this court, in each of the cases cited, declared that inasmuch as these water companies were essential to the comfort, protection, and good health of the city they served, it would be impolitic to allow the property to be sold, thereby putting it out of the power of the company to render the service to the citizens that it was designed to do. This court held, though, that the proper proceeding was to place the property in the hands

of a receiver of the court, if the company failed, after reasonable demand, to pay the taxes, and allow the receiver to' collect its revenues, and therefrom to discharge the taxes due the State and county. It is true that in each of those cases the sheriff was threatening to levy upon and sell the property of the water company, and the suits were brought to enjoin the proceedings. The court required the payment of the taxes as a condition to the granting of the equitable relief in staying the hands of the officer in the sale. In the case at bar, the collecting officer could not levy upon the property of appellant and sell it at pub-. lic outcry, because in both the cases above cited we held that such proceeding was improper. Now to deny the taxing district the right to proceed, in the court for the appointment of a receiver to collect the taxes would be to leave the question of their payment entirely within the will of the taxpayer. As the court has said that the proper proceeding' is by the appointment of a receiver, after reasonable demand for the payment of taxes and a default, and as a receiver can be appointed only in a suit between litigants involving a lien upon, or the right to the possession of the property in question, it necessarily follows that the taxing district is thus recognized as entitled to maintain its action for the purpose of the appointment of a receiver and for the collection of the taxes. The court will not require the idle form of the tax collector's levying upon the water company's property, and having it to institute an injunction suit, in order to reach the inevitable result outlined in the cases above cited.

It follows that the judgment of the circuit court must be affirmed.

Chief Justice Guffy dissenting.

Whole court sitting.

Petition for rehearing by appellant overruled.