CASE 39—EQUITY—JUNE 14, 1883.

# McLean County Precinct v. Deposit Bank of Owensboro.

APPEAL FROM M'LEAN CIRCUIT COURT.

1. Under an act of the general assembly, the Livermore precinct, in McLean county, subscribed stock in the Owensboro and Russellville Railroad Company. The county judge is required to appoint a "collector of taxes so levied for said precinct." He attempted and failed to find a collector. Appellees sought the aid of the circuit court to compel payment by the tax-payers, and the court adjudged that payment be made through its receiver.

2. *Held*—The power to levy or collect taxes is not one of the inherent powers of any judicial tribunal. The duty and the power is legislative.

3. If, when the legislature fails to enact proper legislation, or to provide the means of collecting taxes imposed, the judiciary may interpose, the theory of the government and the distribution of powers are destroyed.

4. The chancellor exceeded his power in appointing a collector of taxes in the precinct, and in rendering judgment against the tax-payers.

CHARLES EAVES, M. C. GIVENS, AND C. W. COOK FOR APPELLANT.

Although the county judge has the power, by the express terms of the act of 1869, to appoint a collector of the tax levied for the Livermore precinct, yet, if he fails to appoint, or no one will accept, it is

McLean County Precinct v. Deposit Bank of Owensboro.

not in the power or jurisdiction of the circuit court to assume the right to appoint a collector or receiver, and thus compel payment of such taxes. It is an usurpation by the judiciary of a legislative power. (19 Wall., 655; 102 U. S., 472; 19 Wall., 665; Thompson v. Allen County, decided by Justice Matthews, Supreme Ct., 4 Ky. Law Rep., 99; Pennington v. Woolfolk, 79 Ky., 13; Johnson v. Louisville, 11 Bush, 557; Acts 1867-'8, vol. 1, 435; Acts 1869, vol. 2, 576-'7.)

SWEENEY & SON FOR APPELLEE.

1. A remedy for the collection of taxes may be presented by statute, either directly or by implication. If no adequate remedy is given, the presumption that a remedy by suit was intended is but reasonable. (Dillon on Mun. Corp., sec. 653; 8 Texas, 384; 39 *Ib.*, 146.)

2. The legislature may create a district for the purpose of taxation or assessment. (5 Bush, 229.)

3. In cases like this, a court of equity will afford a remedy. To administer the right, courts of equity were brought into existence. (Acts 1867-'8, vol. 1, 435; *Ib.*, 436; Acts 1869, vol. 2, 576-'7; 2 Potter's Law Corp., sec. 414; High on Receivers, 304-'5; 18 Wall., 154; 4 *Ib.*, 535; 7 Otto, 293; Acts 1871-'2, vol. 1, 197; 9 Am. Law Reg., 415; *Ib.*, vol. 9 (No. 10), 603; 4 Ky. Law Rep., 99.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The charter of the Owensboro and Russellville Railroad Company was so amended as to authorize the voters of any precinct of any county through which the road might be located to vote a tax, in the way of a subscription or by a majority petition, upon themselves in aid of its construction, and the county judge was required "to levy a tax, when voted, on the taxable property of the precinct to meet the interest and a reasonable amount of the principal annually."

By the third section of an amendment to the charter, approved the 14th of March, 1869, the county judge, when the precinct had made a subscription to the capital stock of the company, was required "*to appoint a collector of said tax so levied for such precinct,*" and he shall appoint such person or persons as the justices of said precinct may

recommend; and if the justices, when notified, neglect to recommend, the presiding judge shall *appoint some discreet person residing in the precinct as collector aforesaid,* taking bond from him for the discharge of his duties, &c.

The Livermore precinct No. 3, of McLean county, on a petition of a majority of its voters, subscribed $50,000 of stock, and issued its bonds to the railroad company in payment. 'The Company sold the bonds, and the road, it seems, was never completed. The appellees, holding a number of the bonds, and being unable, as is alleged, to recover in an ordinary action, instituted the present action in equity, seeking the aid of the chancellor upon the ground that the county judge had, in good faith, endeavored to find some discreet person residing in said district to act as collector of the taxes, and could find no one willing to accept the position, or discharge the duties of collector, and further averring that no one in the precinct would undertake to discharge the duties of such an office. The plaintiff asks that the tax-payers be required to pay the respective sums due by them into court, or to some one appointed by the court as receiver or collector, alleging that it was a trust fund held for the discharge of the bonds and coupons issued by the precinct. A rule was issued against the tax-payers, requiring them to pay the money or taxes owing by them into court. They responded to the rule, and also filed demurrers, general and special, to the proceeding. Their demurrers were overruled, and the response filed deemed insufficient, the rule made absolute, and the tax-payers (the appellants) required to pay the money into court, and upon their failure to do so, executions were directed to be issued, and a receiver appointed and invested by the judgment with all the power and authority of a tax-collector, as conferred by

the act and its amendments authorizing such an appointment by the county judge, &c.

The real question presented by the record, and the only one necessary to be determined, is, had the chancellor the power to collect the taxes by his receiver or the tax-collector appointed by him, when it appeared that the county judge could find no one in the precinct willing to accept the office?

That the remedy afforded by the act under which the vote was taken and the stock subscribed was ample and complete for the collection of the taxes imposed for the payment of the subscription, if the county judge could have found some one within the precinct willing to make the collection, is not controverted; but the chancellor below, seeing that the appellee had been prevented from pursuing that remedy, has exercised the power of appointing a collector, and investing that officer with the power of collecting the taxes. That the remedy had been suspended by reason of the failure or refusal of those living within the precinct to accept the office, or had been temporarily obstructed by reason of a defect in the law under which the collection was to be made, did not enlarge the jurisdiction of the chancellor, or confer upon him the exercise of such an extraordinary power.

In the case of Heine v. Levee Commissioners, 19th Wallace, the court said: "But the hardship of the case, and the failure of the mode of procedure established by law, is not sufficient to justify a court of equity to depart from all precedent, and assume an unregulated power of administering abstract justice at the expense of well settled principles." It may be said in this case, as in the case cited, if the juris-

diction of the chancellor is sustained at all, it must be on the broad ground that, because the plaintiff finds himself unable to collect his debt by the proceedings given him by the act, it is the duty of a court of equity to devise some mode by which it can be done. It will be conceded that it is not one of the inherent powers of any judicial tribunal, whether state or federal, to levy or collect taxes, and when the instrumentalities selected by the law-making power for making such collections cease to exist, or decline to act, the remedy is in the legislative department of the state government, and not with the judiciary. If the legislation in regard to the collection of taxes, whether for the purpose of affording revenue for the state, or of satisfying a debt due to a corporation by reason of a county or precinct subscription, proves defective or inadequate for that purpose, the remedy is not by applying to a court of equity to cure the defect, but the legislature, under the constitution, can alone supply the defect by amended legislation. The judiciary has no power to levy taxes or to collect taxes when the officer appointed to collect refuses to do so; or if no one is appointed to collect, the judiciary is powerless to supply the defect. These are all legislative duties, and when the department of the government to which these duties are confided neglects to discharge them, neither the judicial or executive department of the government can execute such powers. If, when the legislature fails to make proper laws, or provide the means of collecting taxes imposed, the judiciary may intervene and perform such duties, there is an end to the theory of the powers belonging exclusively to each of the three departments of the government, and the necessity for keeping each within its proper sphere for its successful administration no longer exists.

It is not necessary to discuss the powers confided to each department—those which are legislative to one, those which are executive to another, and those which are judicial to another—as we regard it as now authoritatively settled that no such jurisdiction belongs to a court of equity.

Counsel for the appellees argue that a state court may exercise such a power, when a federal court must decline to take jurisdiction. This brings us back to the doctrine contended for by counsel, that as the defect in the law exists by reason of state legislation, it is the duty of the state courts to furnish the remedy.

The extent of federal jurisdiction over such cases is not a question at issue in this case, and besides, the decisions of the supreme court are based alone upon the ground that a court of equity cannot entertain such a jurisdiction. In the case of Rees v. The City of Watertown, reported in 19th Wallace, Rees was the owner of certain bonds of the town, issued by authority of the state to the Watertown and Madison Railroad Company, and by that company sold for its benefit. A judgment was obtained by Rees, a citizen of Illinois, and mandamus after mandamus issued to compel the levy and collection of the tax for the payment of the subscription, and the city officials defeating the efforts of the plaintiff to coerce payment by resigning their offices, a court of equity was applied to, in which the federal court was asked to appoint its marshal to levy and collect the tax, and the supreme court held that a court of equity had no such power.

" A court of equity (says the court) cannot, by avowing that there is a right, but no remedy known to the law, create a remedy in violation of law, or even without the author-

ity of law.   It acts not only upon established principles, but through established channels.''

In the case of Heine v. The Levee Commissioners, reported in the same volume, the doctrine was again recognized.   The commissioners to make the levy having resigned, and a court of equity applied to for relief, it was held that the power to collect and levy taxes is a legislative function, and does not belong to a court of equity.

In Barkley v. Levee Commissioners, where the officers authorized to make the levy resigned, or ceased to exist, the court said: ''Nor can the court authorize the marshal to levy taxes in such a case, nor in any case, except where a specific law authorizes such a proceeding.''   (3 Otto, page 258.)

In the case of Meriwether v. Garret, the legislative act chartering the city of Memphis having been repealed, and taxes having been levied before the repeal, an attempt was made to enforce the collection by bill in equity in the United States circuit court for the district of Tennessee, and on an appeal to the supreme court, it was held that no such power existed, and that the remedy, and the only remedy, was by an appeal to the legislature to grant the relief.   A distinction was taken by some of the members of that court, and a very proper one, too, between mere contract obligations and the collection of taxes for the support of the government, or for some special purpose authorized by it.   The right of a court of equity to enforce the contracts of the corporation, and subject to the payment of the debt the property of the corporation, was recognized in the opinion of Justice Field, upon the ground that its property was a trust fund, pledged to the payment of its creditors, and, on the other hand, that taxes levied, but not collected, when the

dissolution of the corporation took place, were not the property of the corporation, and a court of equity, through officers of its own appointment, could not proceed to the collection in order to satisfy the demands for the payment of which the taxes had been levied.

In the case of Wolf v. The City of New Orleans, where bonds had been issued by the city in aid of a railroad company under legislative authority, and the power of taxation given to enable the city to pay the debt, it was held that this delegation of power could not be revoked so as to prevent the bondholder from compelling the city to make the levy by its properly constituted authorities; but this case does not determine or recognize the power in the chancellor to appoint municipal officers, whose duty it was to levy and collect the tax in the event they had resigned, but only recognizes the right of compelling those in authority to execute the law. We perceive no distinction between the present case and that of Rees v. The City of Watertown, or Heine v. The Levee Commissioners.

In the case of Thompson v. Allen County, Justice Matthews, of the supreme court, then holding the United States circuit court, held, where a special tax had been levied in pursuance of a mandamus, and where no suitable person could be found as collector in the county, and that fact appearing, that the holder of the bonds was not entitled to relief upon such a ground, *" the collection of a tax belonging as much to the authorities of the state as its levy and assessment, and the reasons which forbid a court to supply the latter, apply with equal force to the former. The jurisdiction of courts is confined to compelling the state officers to perform their duties under state laws, and no substitute can be invented."*

In Pennington v. Woolfolk, 79th Ky., this court said the power to impose taxes is legislative, and cannot be confided, under our constitution, to a judicial tribunal.

In Johnson v. The City of Louisville, the right to proceed in any other mode than that provided by the statute was denied, and where a judgment for taxes has been rendered by a judicial tribunal in any of the cases referred to in the consideration of this question, it has been by reason of some legislative authority providing such a remedy, where the ordinary remedy proves inadequate. Nor is it to be presumed that the legislative tribunal to which the appeal must be made, after authorizing the imposition of the taxes for a special purpose, will permit the credit of the state, or of a portion of the state, to be impaired or affected by refusing to lend its aid to the creditor to enable him to collect a debt, whether by taxation or otherwise, entered into in good faith, and acquired by the creditor from the corporation for a valuable consideration. What may be the legislative action on the subject is not, however, a question for this court, and we are satisfied the chancellor exceeded his power in rendering a personal judgment against the tax-payers, and in appointing a collector of taxes for the precinct.

The entire judgment is therefore reversed, with directions to dismiss the petition without prejudice.